SEANAH J. DIXON 62866
Name and Inmate Booking Number

HIGH DESERT STATE PRISON
Place of Confinement

POST OFFICE BOX 650
Mailing Address

INDIAN SPRINGS, NV, 89070
City, State, Zip Code

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

SEANAH J. DIXON ,

Plaintiff

vs.

(1) STACY BARRETT ,

(2) ROBERT JARRETT ,

(3) ROBERT ASHCRAFT ,

(4) WILLIAM OBLAK ,

(5) UNKNOWN GARCIA, ET. AL., ,

Defendant(s).

Case No. _____
(To be supplied by Clerk of Court)

✳EMERGENCY✳
**CIVIL RIGHTS COMPLAINT
BY AN INMATE**

☒ Original Complaint

☐ First Amended Complaint

☐ Second Amended Complaint

☒ Jury Trial Demanded

## A.    JURISDICTION

1)    This Court has jurisdiction over this action pursuant to:

☒ 28 U.S.C. § 1343(a)(3); 42 U.S.C. § 1983

☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)

☐ Other: _____

2)    Institution/city where Plaintiff currently resides: HIGH DESERT STATE PRISON

3)    Institution/city where violation(s) occurred: HIGH DESERT STATE PRISON & ELY PRISON

22-0458

## B.    DEFENDANTS

1. Name of first Defendant: STACY BARRETT          . The first Defendant is employed as:
   CASE WORKER SUPERVISOR     at HIGH DESERT STATE PRISON ("HDSP").
   (Position of Title)                    (Institution)

2. Name of second Defendant: ROBERT JARRETT   . The second Defendant is employed as:
   SENIOR CORRECTIONS OFFICER ("SCO")  at   HDSP                         .
   (Position of Title)                    (Institution)

3. Name of third Defendant: ROBERT ASHCRAFT   . The third Defendant is employed as:
   SCO                        at   HDSP                         .
   (Position of Title)                    (Institution)

4. Name of fourth Defendant: WILLIAM OBLAK      . The fourth Defendant is employed as:
   SCO                        at   HDSP                         .
   (Position of Title)                    (Institution)

5. Name of fifth Defendant: UNKNOWN SCO GARCIA . The fifth Defendant is employed as:
   SCO @ HDSP INTAKE/PROPERTY   at   HDSP                        .
   (Position of Title)                    (Institution)

**If you name more than five Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C.    NATURE OF THE CASE

Briefly state the background of your case.

THIS IS A "550" PRISONER CIVIL RIGHTS ACTION FOR UNCONSTITUT-
IONAL RETALIATION AND DELIBERATE INDIFFERENCE TO SERIOUS
MEDICAL NEEDS UNDER THE 1ST AND 8TH AMENDMENTS TO THE
UNITED STATES CONSTITUTION.

22-0458

6). SCO MARTINEZ IS EMPLOYED AS SCO AT HDSP.

7). SCO STEWART IS EMPLOYED AS SCO AT HDSP.

8). CALVIN JOHNSON IS EMPLOYED AS WARDEN AT HDSP.

9). D. ONTIVEROS IS EMPLOYED AS LIEUTENANT AT HDSP.

10). MICHAEL MINEV IS EMPLOYED AS NDOC MEDICAL DIRECTOR.

11). BENITO GUTIERREZ IS EMPLOYED AS DIRECTOR OF NURSING AT HDSP.

12). SANDRA GOBLER IS EMPLOYED AS DIRECTOR OF NURSING AT HDSP.

13). STATE OF NEVADA EX REL IS A SOVEREIGN STATE.

14). R. VALLE IS EMPLOYED AS CORRECTIONS OFFICER ("CO") AT HDSP.

15). EDGAR LOPEZ-MAYA IS EMPLOYED AS A CO AT HDSP.

16). TERRENCE JACKSON IS EMPLOYED AS A CO AT HDSP.

17). ELLERY RAYFORD IS EMPLOYED AS A CO AT HDSP.

18). S. SALKOFF IS EMPLOYED AS A CO AT HDSP.

19). FRED ZABEL IS EMPLOYED AS A CO AT HDSP.

20). UNKNOWN GISTEN IS EMPLOYED AS A CO AT HDSP.

21). UNKNOWN RONOS IS EMPLOYED AS A CO AT HDSP.

22). UNKNOWN EMIL IS EMPLOYED AS A CO AT HDSP.

23). DAVID RIVAS IS EMPLOYED AS A PHYSICIAN AT HDSP.

24). WILSON BERNALES WAS A PHYSICIAN EMPLOYED AT HDSP.

25). D.A. JONES IS A CHARGE NURSE III ("CNIII") AT ELY STATE PRISON ("ESP").

26). JUSTIN IS A CNIII AT HDSP.

27). JOHN/JANE DOES 1 THRU 75, INCLUSIVE, ARE VARIOUS HDSP
UNIDENTIFIED NURSES AND PRIMARY CARE PHYSICIANS ("PCP")
WHO ARE MATERIAL TO THIS ACTION BUT WHOMS IDENTITIES CANNOT
YET BE ASCERTAINED FOR THIS ACTION DUE TO FRAUDULENT CON-
CEALMENT.

22-0458

### D.    CAUSE(S) OF ACTION

### CLAIM 1

1. State the constitutional or other federal civil right that was violated: EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

2. **Claim 1**.  Identify the issue involved.  Check **only one**.  State additional issues in separate claims.

   □ Basic necessities          ☒ Medical care          □ Mail

   □ Disciplinary proceedings   □ Exercise of religion   □ Property

   □ Access to the court        □ Excessive force by officer   □ Retaliation

   □ Threat to safety           □ Other: _____.

3. **Date(s) or date range** of when the violation occurred: 09/13/21 THRU CURRENT .

4. **Supporting Facts**: State as briefly as possible the FACTS supporting Claim 1.  Describe exactly what **each specific defendant (by name)** did to violate your rights.  State the facts clearly in your own words without citing legal authority or argument.

5. MS. DIXON V. HAS ACUTE LIFE-THREATENING MEDICAL CONDITIONS INCLUDING FLUCTUATING HEART CONDITION, COPD, ASTHMA, ANXIETY, POTENTIALLY CANCEROUS PENILE CYST, HISTORY OF KIDNEY FAILURE, HEPATITIS C, LEFT ARM NUMBNESS, BLOOD CLOTS, BLOCKED ARTERIES, CRANIAL AND LEFT ARM TINGLING SENSATIONS, HIGH BLOOD PRESSURE ("HBP"), SPINAL INJURIES, POSSIBLE THROAT, COLON AND LUNG CANCER²¹, CONSTANT EXPELLING OF BLOOD FROM INTERNAL BLEEDING, BLOOD IN STOOL, BREATHING DIFFICULTIES AND A UNASCERTAINED NEUROLOGI-CAL CONDITION.

6. THESE CONDITIONS CAUSE CONSTANT FATIGUE, WEAKNESS, SYNCOPE, PERFUSE SWEATING, LACK OF APPETITE, DIFFICULTIES EATING, SWALLOWING AND SLEEPING, HEART, CHEST AND HEAD PAINS, BLURRED VISION, ELEVATED STROKE RISKS, CONSTANT PERSISTENT AND INTOLERABLY EXCRUCIATING HEADACHES AND AGONIZING DISTRIBUTED PAINS THROUGH OUT HER ENTIRE BODY.

7. AS A TRANSGENDER DIAGNOSED WITH GENDER IDENTITY DISORDER ("GID")/ GENDER DYSPHORIA ("GD") PROJECTING FEMININE CHARACTERISTICS, SHE HAS BEEN AND REMAINS ON HORMONE REPLACEMENT THERAPY ("HRT") TYPICALLY WARRANTING ENDOCRINOLOGY SPECIALTY MONITORING AND PERIODIC CONSULTS.

3

4

22-0458

8. SHE'S BEEN CONSULTED WITH CARDIOLOGY FOR HER HEART CONDITION. HOWEVER, NOT ALL SPECIALTY ORDERS HAVE BEEN ADHERED TO BY NDOC AND MEDICAL DEFENDANTS. MS. DIXON IS THE EPITOME OF A CHRONIC CARE PATIENT ("CCP") AND THE EVENTS TO FOLLOW ARE THE EPITOME OF DELIBERATE INDIFFERENCE.

9. PURSUANT TO THE INTERSTATE COMPACT AGREEMENT, SHE TRANSFERRED TO CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR") FOR 16 YEARS WHERE SHE MET HER ASSISTING INMATE TONEY A. WHITE NDOC NO. 1214172. IN CDCR, SHE WAS COMPREHENSIVELY AND CONSISTENTLY EVALUATED, MONITORED AND TREATED FOR HER MANY MEDICAL MALADIES. SHE FREQUENTLY CONSULTED WITH ENDOCRINOLOGY FOR HER HRT AND ROUTINE TESTING INCLUDED FREQUENT BLOOD WORKS.

10. ULTIMATELY, ON AND ABOUT MARCH 30, 2016, SHE RETURNED TO THE NEVADA DEPARTMENT OF CORRECTIONS ("NDOC"). HER CDCR UNIT HEALTH RECORD ("UHR") ACCOMPANIED HER RETURN PLACING NDOC ON NOTICE OF HER CONTINUITY OF CARE NEED AND ROUTINE FOLLOW UPS WITH PRIMARY CARE PROVIDERS ("PCP") AND SPECIALTY CLINICS INCLUDING NEUROLOGY, ENDOCRINOLOGY AND CARDIOLOGY. SHE'S REMAINED IN NDOC TODATE.

11. GIVEN CHRONIC NATURES OF HER AILMENTS, SINCE MARCH 30, 2016 SHE'S BEEN REGARDED A CCP UNDER DEFENDANT MINEV'S MEDICAL DIRECTIVES WHICH GOVERN PROVISION OF MEDICAL CARE IN ALL NDOC FACILITIES INCLUDING HDSP AND ESP. TODATE, SHE'S SUBMITTED A SMORGASBORD OF MEDICAL KITE AND SERVICE REPORT REQUESTS ("MKSR"), STANDARD REQUESTS AND COMPLAINTS, BOTH FORMAL AND INFORMAL TO DEFENDANTS MINEV, JOHNSON, JONES, GUTIERREZ, GOBLER, RIVAS, BERNALES, JUSTIN AND VARIOUS UNIDENTIFIED DOES AND HAS SUMMONED "MAN DOWN" EMERGENCY MEDICAL SUMMONS CONSISTENTLY.

---

1. MS. DIXON IS A MALE-TO-FEMALE TRANSGENDER AND SEEKS THAT THE COURT AND ALL PARTIES RESPECTFULLY CONFORM TO PROPER PRONOUN ADDRESSING HER IN THE FEMININE CONTEXT. SEE SCHWENK V. HARTFORD, 204 F.3D 1187 (9TH CIR. 2000).

2. CONDITIONS IN WHICH ANY REASONABLE PERSON OF NORMAL SENSIBILITY WOULD AGREE WARRANTS "EARLY" NOT DELAYED DETECTION/INTERVENTION FOR FAVORABLE PROGNOSIS.

22-0458

12. MOST, IF NOT ALL, HAVE FALLEN ON DEAF EARS OR RESULTED IN PROFORMA TREATMENT. OF THE FEW WHICH PCP ORDERS DID MATERIALIZE IN EFFORTS TO RULE OUT, DETECT ETIOLOGY AND TREAT THE CONDITIONS, THESE ORDERS AND PORTIONS OF CARE HAVE BEEN DEFIANTLY AND NONCHALANTLY REBUFFED, IGNORED AND SUBJECT TO EGREGIOUS UNREASONABLE AND PROTRACTED DELAYS TO HER DETRIMENT. SHE'S CONSISTENTLY TOLD "BE PATIENT," "NOT AN EMER-GENCY"[3]. AS HER HEALTH RAPIDLY DETERIORATES WHILE A POSSIBLE CANCEROUS CULPRIT CONSUMES HER AND AS DEFENDANTS PROCRASTINATE IN DELIVERY OF CONSTITUTIONAL TREATMENT TO ERADICATE HER WANTON SUFFERINGS AND TORMENTS.

13. SOME OF HER COMPLAINTS AND MKSR'S HAVE ELICITED THE MOST ABSURD AND INSENSITIVE RESPONSES FROM MEDICAL DEFENDANTS. IN ADDITION TO THEIR POSSESSION OF HER CDCR UHR, SHE HAS RELENT-LESSLY ADVISED MEDICAL DEFENDANTS OF HER CONDITIONS PLACING THEM ON NOTICE RESPECTIVELY AS FOLLOWS:

| DATE | CONDITION (S) |
| --- | --- |
| 03/30/16 | ASTHMA, COPD, PENILE CYST, HBP, HEP C, BLURRED VISION, ABDOMEN PAIN, FAINT SPELLS, HEAD INJURIES, BREATHING DIFFICULTIES, STOMACH ULCERS AND HISTORY OF KIDNEY FAILURE; |
| 12/03/19 | ANXIETY |
| 04/20/20 | BACK, NECK, LUNG PAINS |
| 06/25/20 | HEREDITARY CANCER |
| 08/11/20 | ANAL PAINS |
| 10/09/20 | ARM / NECK NUMBNESS |
| 02/19/21 | EXCRUCIATING HEADACHES |
| 02/25/21 | BLOCKED ARTERIES |
| 04/09/21 | BLOOD CLOTS |

3. NO PROVISION OF AR 740 EXPRESSLY DEFINES EXACTLY WHAT CIRCUMSTANCES CON-STITUTE AN EMERGENCY GRIEVABLE ISSUE NOR DOES ANY PROVISION PRECLUDE VOMIT-ING BLOOD, BLOOD IN STOOL, HEART AND CHEST PAINS, BREATHING DIFFICULTIES OR POSSIBLE PROGRESSIVE CANCER AS BEING CONSIDERED A EMERGENCY BASIS. NONETHELESS, ABSENT HESITATION AND WITH HASTE MEDICAL DEFENDANTS INDISCRIMINATELY CITE AR 740 TO CONCEAL THEIR LACK OF WILLINGNESS IN PROVIDING HUMANE AND CONSTITUTIONAL CARE AND AS A MEDICAL TREAT-MENT BUFFER.

6

11/14/21                          EXPELLING BLOOD AND BLOOD IN STOOL

14. VARIOUS OF THESE ACUTE AILMENTS CARRY POTENTIALLY CATASTROPHIC AND FATAL CONSEQUENCES AND NOT DIAGNOSED, CONFRONTED OR CLINICALLY INVESTIGATED, ONLY AGGRESSIVELY PROGRESS AND FESTER TO HER DETRIMENT. THEY CAUSE EXTREME PHYSICAL AND PSYCHOLOGICAL PAIN, WANTON SUFFERING, GREAT ANXIETY AND DISTRESS AND ARE SUBSTANTIALLY TRAUMATIC LEAVING MS. DIXON IN CONSTANT AGONY, TORMENT, FEAR AND TERROR OF IMPENDING DEATH AND/OR SERIOUS BODILY INJURY. THEY HAVE A DELETERIOUS IMPACT ON HER HEALTH, DAILY ACTIVITIES AND LIFE EXPECTANCY.

15. AMONGST A LITANY OF DIAGNOSTIC TESTINGS ORDERED AND NOT PERFORMED TODATE ARE A AFP CANCER MARKER TEST, MRI, CT SCAN, NECK X-RAY, BREATHING TESTS, FOLLOW UP HEP C MONITORING, NEUROLOGY REFERRAL, BLOOD PRESSURE CHECKS, COLONOSCOPY, ENDOSCOPY AND LABS ALL ORDERED TO DETECT/TREAT POSSIBLE HEREDITARY COLON, LUNG, THROAT CANCER, ADDRESS HER SPINAL/NECK CONDITIONS AS WELL AS OTHER CONDITIONS.

16. AFTER RETURN TO NDOC SHE SOUGHT ACCESS TO ENDOCRINOLOGY EARLY AS APRIL 15, 2017. PRIOR TO HER MARCH 21, 2021 TRANSFER TO ESP AND WHILE AT NORTHERN NEVADA CORRECTIONAL CENTER ("NNCC") AND LOVELOCK CORRECTIONAL CENTER ("LCC"), ON AUGUST 14, 2016 SHE BROKE HER RIGHT HAND RADIUS BONE WARRANTING EMERGENCY SURGERY AND METALLIC HARDWARE BEING INSTALLED ALONG WITH A RIGHT WRIST STABILITY BRACE. BY APRIL 20, 2020 SHE WAS DIAGNOSED WITH A POTENTIALLY FATAL CONDITION KNOWN AS "HYPERLIPIDEMIA." TESTS OF MAY 21ST AND OCTOBER 05TH, 2020 CONFIRMED HER AFFLICTION WITH COPD/ASTHMA. RESULTS OF JUNE 25, 2020 RETURNED POSITIVE FOR BLOOD IN HER STOOL THRICE. BY APRIL 20TH AND NOVEMBER 18TH, 2020,

7

IT WAS DISCOVERED SHE SUFFERED FROM "UNCONTROLLED" HBP.

17. SHE TRANSFERRED TO ESP ON MARCH 24, 2021. AT ESP SHE RECEIVED SOME DEGREE OF DILIGENT AND REASONABLE CARE AT A "LOWER LEVEL OF CARE." IN HER 8 MONTHS THERE SHE CONSULTED WITH PCP's 6-9 TIMES.

18. ON JUNE 08, 2021 ORDERS ISSUED FOR A CT SCAN, MRI AND X-RAY OF HER C-SPINE AND NECK AND FOR A COLONOSCOPY AND ENDOSCOPY IN EFFORTS TO DETECT CANCER. SHE WAS SUMMONED JULY 20, 2021 TO TRANSFER TO HDSP FOR THE PERFORMANCE OF THE ENDOSCOPY AND COLONOSCOPY AS A "ADD-ON." HOWEVER, DUE TO LEGITIMATE SAFETY CONCERNS SHE DECLINED THAT TRANSFER IN THE INTEREST OF HER SAFETY AND LIFE.

19. AS A PROTECTIVE CUSTODY ("PC") INMATE, NDOC'S "ADD-ON" TRANS-PORT PRACTICES OF MIXING GENERAL POPULATION ("GP") WITH PC POSED A DIRECT IMMINENT THREAT TO MS. DIXON WHO WAS VISIBLY A TARGET OF GP's. HISTORICALLY, THESE TRANSFERS RESULTED IN SEVERE ATTACKS AND IN SOME INSTANCES MURDER DURING TRANSPORT. GIVEN MS. DIXON'S TRANSGENDER STATUS, HRT AND LIKELY TARGET OF ASSAULT, SHE DECLINED. HER FEARS WERE WELL-FOUNDED AS PC INMATE CLINT ROWE WHO ELECT-ED TO PROCEED WITH THE TRANSPORT MS. DIXON WAS SCHEDULED TO ATTEND, WAS SAVAGELY BEATEN.

20. ON JULY 23, 2021 SHE FILED GRIEVANCE NO. 2006 3125730 COMPLAIN-ING OF DEFENDANTS FAILURE TO TREAT HER COPD/ASTHMA. DEFENDANT JONES GRANTED THE GRIEVANCE ON SEPTEMBER 13, 2021. HOWEVER, JONES NEVER SET IN MOTION NOR COORDINATED TESTING AND/OR TREATMENT OF HER COPD/ASTHMA AND THE GRANT WAS MERE LIP-SERVICE TO APPEASE MS. DIXON.

21. SHE ALSO FILED GRIEVANCE NO. 2006 3125726 CHALLENGING THE

8

22-0458

TRANSFER CIRCUMSTANCES DEFENDANTS ATTEMPTED TO SUBJECT HER TO

BY IN WHICH TO OBTAIN HER CRUCIALLY NEEDED ENDOSCOPY/COLONSCOPY

PROCEDURES SEEKING RESCHEDULING UNDER SAFER TRANSPORT CONDITIONS.

22. ON AUGUST 17, 2021 SHE WAS PLACED ON BACLOFEN. A NEUROLOGY

CONSULT AND BREATHING TESTS WERE ORDERED. BACLOFEN PROVIDED

SOME DEGREE OF RELIEF FROM NECK/BACK PAINS. ON SEPTEMBER 01,

2021 A HEP C PROTOCOL WAS IMPLEMENTED TO TREAT THAT CONDITION.

HOWEVER, MULTIPLE POST-TREATMENT ORDERS RELATING TO TREATMENT

WERE SIMPLY REBUFFED BY ESP AND HDSP MEDICAL STAFF. ON SEPT-

EMBER 15, 2021 A AFP CANCER MARKER TEST WAS ORDERED BUT NOT

ADHERED TO. ON OCTOBER 26, 2021 ANOTHER NEUROLOGY REFERRAL AND CT

SCAN WERE ORDERED AND SHE AGAIN SOUGHT THAT THE COLONOSCOPY

AND ENDOSCOPY PROCEDURES BE RESCHEDULED.

23. BY EARLY NOVEMBER 2021, DUE TO CONTINUED HEART PROBLEMS, SHE WAS

FITTED/MONITORED WITH A HOLTER MONITOR. BY NOVEMBER 04, 2021

PCPS WERE UNSETTLED BY DISTURBING RESULTS. A CARDIOLOGIST IMMED-

IATELY DISCONTINUED PROPRANOLOL RELATED TO BRADYCARDIA AND CONTRA-

INDICATORS. AN IMMEDIATE TRANSPORT TO HDSP WAS WARRANTED FOR

"URGENT", "IMMEDIATE", "STAT" AND "ASAP" CARDIOLOGY CONSULT AND

TO PURPORTEDLY PROVIDE A "**HIGHER**" LEVEL OF CARE ("LOC"). UPON

THIS TRANSFER HER LOC URGENCY ON A 1-5 SCALE WAS "1" BEING THE

SEVEREST.

24. UPON ARRIVAL TO HDSP ON NOVEMBER 05, 2021, THE TRANSFER/RECEIVING

SUMMARY COMPLETED BY RN TERESA STARK OF ESP PUT GREAT EMPHASIS ON

PLAINTIFF'S URGENT AND DIRE MEDICAL STATE AND STATUS USING TERMS

AS "STAT", "URGENT", "IMMEDIATE NEED", AND "ASAP!"

25. HDSP IS A 4000 PRISONER FACILITY. WHILE OFFICERS ARE MAN-

9

22-0458

DATED TO CLAD VISIBLE NAME PLATES, THIS ISN'T, NOR HAS IT EVER BEEN, PRACTICE OF MEDICAL STAFF MAKING THEM FUNCTIONALLY EQUIVA-LENT OF GHOSTS OPERATING IN THE SHADOWS AND RENDERING OFFENDED PRISONERS SUCH AS MS. DIXON INCAPABLE OF IDENTIFYING THEIR MED-ICAL ABUSERS FOR LEGAL AND ACCOUNTABILITY PURPOSES [4]/.

26. PRIOR TO, CONTEMPORANEOUS WITH AND SUBSEQUENT TO MS. DIXON'S ARRIVAL AT HDSP, MEDICAL DELIVERY WAS IN A CONSTITUTIONAL CRISIS, WAS DEPLORABLE AND ITS MEDICAL DEPARTMENT OPERATED UNDER COMPLETE DYSFUNCTION, DISARRAY AND DISORGANIZATION TO PRISONERS DETRIMENT. IT OFFERS NO SICK CALLS BY NURSES TO REMEDY EASILY TREATABLE CON-DITIONS UNWORTHY AND UNNEEDING OF PCP CONSULT. IT SOLELY STAFFED 3 PCPS TO CARE FOR A POPULATION OF 4000 PRISONERS. AFTER FIRING DR. BERNALES DUE TO FRAUD, IT SOLELY STAFFS DR. RIVAS TO CARE FOR IT'S SWELLING POPULATION.

27. ITS PHARMACY FAILS TO RETAIN FLOOR STOCK OF ESSENTIAL LIFE-SUSTAINING MEDICATIONS TO ALLEVIATE CLEARLY FORESEEABLE AND PREDICTABLE INTERRUPTIONS IN INMATE ESSENTIAL MEDICATION REGIMENS AND SUFFERINGS. RATHER, IT RELIES AND IS DEPENDANT ON FILLING/REFILLING PRESCRIPTIONS AT A OFF-SITE CENTRAL PHARMACY ROUTINELY LEAVING INMATES, SUCH AS MS. DIXON, LANQUISH-ING UNMEDICATED AND SUFFERING DURING REFILLS FOR WEEKS ON EDGE AND IN SOME CASES MONTHS, DESPITE THE SEVERITY OF THEIR AILMENTS. DUE TO SHORTAGE OF PCPS AND NURSES, PATIENTS SUCH AS MS. DIXON WITH SEVERE AND INTOLERABLY PAINFUL CONDITIONS AND POSSIBLE CANCER, LANQUISH FOR UPWARDS OF 6 MONTHS BEFORE SEE-ING A PCP, IF AT ALL.

---

4. THIS IS PRECISELY WHY PLAINTIFF PROPORTIONATELY ENLISTS ALMOST ALL MEDICAL DEFENDANTS BY DOE PSEUDONYMS.

22-0458

28. AS DIRECTOR OF MEDICAL DIVISION MINEV IS RESPONSIBLE FOR HIRING AND RETAINING SUFFICIENT PCPS AND NURSES AT HDSP IN A NUMBER SUFFICIENT TO ACCOMMODATE MEDICAL NEEDS OF A SWELLING POPULATION OF 4000 PRISONERS AND IN PROPERLY SUPERVISING AND AUDITING HDSP'S MEDICAL OPERATIONS TO ENSURE IT OPERATED WITHIN CONSTITUTIONAL NORMS AND MINIMUM STANDARDS. HIS DERELICTION IN DOING SO TACITLY FOSTERED THE CURRENT ENVIRONMENT AND CLIMATE NOW PREVALENT AT HDSP, SET IN MOTION AND IS THE PROXIMATE CAUSE AND MOVING FORCE BEHIND MS. DIXON'S CONSTITUTIONAL VIOLATIONS. THROUGH VARIOUS GRIEVANCES AND SUITS MINEV BECAME KNOWLEDGEABLE OF THE DEPLORABLE LEVELS OF MEDICAL INDIFFERENCES AND ABUSES AT HDSP FAR PRIOR TO MS. DIXON'S NOVEMBER 05, 2021 ARRIVAL AND TACITLY SANCTIONED AND RATIFIED THEM BY FAILING TO CORRECT THEM AND IN EFFECT ACQUIESCING IN THE ABUSES OF HIS SUBORDINATES WITH COMPLETE INDIFFERENCE TO THE HEALTH, LIVES AND SUFFERINGS OF HDSP RESIDENTS, INCLUDING MS. DIXON.

29. LIKEWISE, DEFENDANT JOHNSON AS HDSP'S WARDEN WAS RESPONSIBLE FOR THE HIRING AND RETAINING SUFFICIENT MEDICAL STAFF AT HDSP IN A MANNER TO CARE FOR THE POPULATION OF INMATES UNDER HIS CHARGE INCLUDING MS. DIXON. HE WAS RESPONSIBLE FOR THE WELFARE AND HEALTH OF INMATES UNDER HIS CHARGE AND FOR ENSURING ALL 4000 PRISONERS UNDER HIS CHARGE RECEIVED ADEQUATE, **TIMELY**, EFFECTIVE, OBJECTIVE AND CONSTITUTIONALLY ACCEPTABLE CARE AND TREATMENT. THROUGH VARIOUS GRIEVANCES, SUITS AND INMATE DEATHS HE BECAME KNOWLEDGEABLE OF HDSP'S DEPLORABLE MEDICAL CRISIS AND ITS DIRECT LINK TO THE DEATHS AND SUFFERINGS OF INMATES UNDER HIS CHARGE FAR PRIOR TO MS. DIXON'S ARRIVAL. HE TOO TACITLY SANCTIONED AND RATIFIED THEM BY FAILING TO EXPOSE, CON-

11

22-0458

FRONT, CORRECT AND/OR REPORT THEM TO MINEV FOR ACTION AND THROUGH CONCEALMENT IN EFFECT ACQUIESCING THROUGH INACTION IN THE MANY ABUSES OF HIS SUBORDINATES WITH COMPLETE INSENSITIVITY AND IN- DIFFERENCE TO THE HEALTH, LIVES AND SUFFERINGS OF HDSP RESIDENTS IN- CLUDING MS. DIXON. IN ALL RESPECTS JOHNSON SIMPLY STUCK HIS HEAD IN THE SAND.

30. AT HDSP MS. DIXON WAS ADMITTED TO THE INFIRMARY BY ORDER OF DR. RIVAS. ITS CONDITIONS WERE FUNCTIONAL EQUIVALENT OF SEGRE- GATIONS HARSHEST. SHE REMAINED UNTIL HER NOVEMBER 10, 2021 IN- SISTED DISCHARGE GIVEN ITS PUNITIVE CONDITIONS.

31. AFTER ADMIT, HOWEVER, AND COGNIZANT THAT HER TRANSFER WAS TO PROVIDE A "HIGHER" LOC, DR. RIVAS RESUMED ALL CHRONIC MEDICATIONS ADDING PLAVIX AND REORDERING PROPRANOLOL AGAINST CARDIOLOGY ORDERS AND DESPITE LACKING MEDICAL EDUCATION OR QUALIFICATION TO REFUTE THE CARDIOLOGY DETERMINATION.

32. UNBEKNOWN TO MS. DIXON, WAS PROPRANOLOL AS ORDERED BY DR. RIVAS, ABSENT CARDIOLOGY APPROVAL, ACTED TO ONLY EXACERBATE HER HEART/ CHEST PAINS AND BREATHING DIFFICULTIES. DR. RIVAS ARBITRARILY REDUCED HER URGENCY LOC FROM 1 OF 5 TO 3 OF 5 (IE., FROM UR- GENT/CRITICAL TO MODERATE) AND ABSENT CONSULTING HER ARBITRAR- ILY DISCONTINUED HER BACLOFEN RESTORING HER TO AGONIZING NECK AND BACK PAINS OTHERWISE TOLERABLE WITH THE MEDICATION AND WITH PROVISION OF NO ALTERNATIVE.

33. UNLICENSED AND EMPLOYED BY FRAUDULENT MEANS, SHE SAW DR. BERNALES NOVEMBER 09, 2021. AGAINST CARDIOLOGY ORDERS HE TOO CONTINUED PROPRANOLOL. HE ALSO ORDERED LABS "ASAP" AND CHECKING OF ELECTROLYTES. A EKG WAS CONDUCTED AND ITS ABNORMAL RESULTS

22-0458

GIVEN TO DR. RIVAS WHO ON NOVEMBER 10, 2021 CONSULTED WITH AND

PURSUANT TO HER INSISTENCE DISCHARGED HER. LABS RETURNED NOVEMBER

11, 2021 REPORTING 6 ABNORMAL FLAGS, WHILE IN THE INFIRMARY HER

COMPLAINTS OF HEART/CHEST PAINS AND BREATHING DIFFICULTIES CONTINUED

BUT FOR DR. RIVAS AND BERNALES'S DOCTORING OF MEDICAL RECORDS WHICH

WAS TYPICAL OF THESE 2 ROGUE PCPS.

34. ON NOVEMBER 14, 2021 MS. DIXON GRIEVED INSISTING ON POST-HEP C

PROTOCOL MONITORING AND TESTING, ENDOCRINOLOGY ACCESS AND COMPLAIN-

ING OF HER LITANY OF AILMENTS SEEKING RESPONSIVE TREATMENTS. MEDI-

CAL DEFENDANTS IGNORED HER AND TODATE, 8 MONTHS LATER, SHE HAS

RECEIVED ABSOLUTELY NO REPLY.

35. DUE TO LAGGING CARDIOLOGY CONSULT FOLLOWING HER EMERGENCY TRANS-

FER, ON DECEMBER 02, 2021 SHE INSTITUTED DIXON V. MINEV, USDC

(D. NEV.) NO. 2:21-CV-02133 APG VCF SEEKING EMERGENCY INJUNCTIVE

RELIEF. SOLELY BY VIRTUE OF THIS CASE WAS HER CARDIOLOGY CONSULT

EXPEDITED. OTHERWISE, SHE MAY STILL BE AWAITING TODATE. THIS ACT-

ION SERVED AS MEDICAL DEFENDANTS FIRST IMPETUS FOR RETALIATION

AND WAS ACTUALLY PLACED INTO HER MEDICAL RECORD FOR ALL TO

SEE.

36. ON AND ABOUT DECEMBER 06, 2021 DEFENDANTS GUTIERREZ, GOBLER, RIVAS

AND BERNALES RECEIVED A EMAIL FROM DAG AUSTIN T. BARNUM NOTIFYING

THEM OF MS. DIXON'S SUIT AND MOTION FOR INJUNCTIVE RELIEF AS NOTED

BY BERNALES. IT WAS PLACED INTO HER MEDICAL RECORD. ONLY AFTER

DID BERNALES VIEW HER LABS. DESPITE LANGUAGE ASSOCIATED WITH

HER EMERGENCY TRANSFER OF "IMMEDIATE", "ASAP", "URGENT" AND "STAT"

PLACING EMPHASIS ON THE EMERGENT NATURE OF HER CARDIOLOGY CONSULT

FOLLOWING HER HDSP ARRIVAL, BERNALES NOTED HER DESIRE TO SEE

13

22-0458

CARDIOLOGY AS "THIS INMATE IS OVERREACHING, DEMAND IS UNREASONABLE"

GIVING MORE WEIGHT TO HIS "ASAP" THAN THAT OF A CARDIOLOGY SPECIALIST.

37. ON DECEMBER 23, 2021 SHE WAS CONSULTED WITH A CARDIOLOGIST AND A

EKG PERFORMED RESULTED IN ABNORMAL FINDINGS, SPECIFICALLY:

   " SINUS BRADYCARDIA WITH FREQUENT VENTRICULAR
   PREMATURE COMPLEXES LATERAL MYOCARDIAL IN-
   FARCTION, PROBABLY RECENT. *** ACUTE MI *** !"

   CERTAINLY THESE READINGS ARE INDICATIVE OF MS. DIXON'S

"HYPOCONDRIAC" TITLE MEDICAL DEFENDANTS WOULD LATER AWARD

HER.

38. REALIZING FATAL PROSPECTS OF PROPRANOLOL PRESCRIBED THE CARDIO-

LOGIST AGAIN IMMEDIATELY DISCONTINUED IT PLACING HER ON METO-

PROLOL 25 MG AND ORDERED STRESS, TREADMILL AND TABLE TILT TESTS,

"STAT." DESPITE A SECOND CARDIOLOGIST DISCONTINUING PROPRANOLOL

AND PRESCRIBING METOPROLOL IMMEDIATELY UPON HER FIRST CONSULT

TO ASSURE HER HEALTH, GUTIERREZ, GOBLER, BERNALES, RIVAS AND

CERTAIN DOES CONTINUED TO ADMINISTER THE POTENTIALLY FATAL

MEDICATION AND ENCOURAGE ITS USE OVER CARDIOLOGY INSTRUCTION.

39. ORDERED DECEMBER 23, 2021, PHARMACEUTICAL AND MEDICAL DOES

AND GOBLER, RIVAS AND BERNALES FAILED TO PROVIDE THE HEART MEDICA-

TION FOR ANOTHER 22 DAYS AND UNTIL JANUARY 14, 2022 WHILE MS.

DIXON SUFFERED, DETERIORATED AND HER SYMPTOMS AND COMPLAINTS

PERSISTED.

40. MEDICAL DEFENDANTS INEPTITUDE AND LACK OF ORDER WAS SO DYSFUNC-

TIONAL SO AS TO SYSTEMICALLY IMPEDE AND INTERFERE WITH MS. DIXON'S

LIFE SUSTAINING MEDICATION AND TREATMENT ORDERED BY THEIR OWN

CARDIOLOGIST. MEDICAL AND PHARMACEUTICAL DOES PURPOSEFULLY, SYS-

TEMICALLY AND PURSUANT TO A DEEPLY ROOTED AND ENTRENCHED CUSTOM,

14

PRATICE AND POLICY, ACTED AND/OR FAILED TO ACT, AND KNOWINGLY PER-
MITTED AND ACQUIESCED IN UNREASONABLE PROTRACTED DELAYS IN
PROVIDING HER HEART MEDICATIONS, EXPOSING AND SUBJECTING HER
TO WANTONLY IMMENSE SUFFERING, HEART ATTACK, STROKE AND A
LOOMING DEATH WITH COMPLETE INDIFFERENCE TO HER HEALTH, SAFETY
AND LIFE.

41. SHOCKINGLY, TO COMPENSATE FOR THEIR EGREGIOUS DYSFUNCTION,
INCOMPETENCE, INEPTITUDE AND UNREASONABLE DELAYS, GUTIERREZ, GOBLER,
RIVAS AND OTHER PHARMACEUTICAL AND MEDICAL DOES BETWEEN DECEMBER
23, 2021 AND JANUARY 14, 2022 ENCOURAGED HER TO CONTINUE PROPRA-
NOLOL CONTRARY TO CARDIOLOGY ORDERS AND UNTIL METOPROLOL ARRIV-
ED FROM THEIR SNAIL-PACED OFF-SITE PHARMACY. BERNALES MADE
A CHART ENTRY DECEMBER 27, 2021 TO " STOP PROPRANOLOL NOW!!"
NONETHELESS, RIVAS, GUTIERREZ, GOBLER AND DOES CONTINUED TO DIS-
PENSE SUCH. WHEN HER HEART MEDICATIONS WEREN'T PROVIDED BY
JANUARY 04, 2022, SHE GRIEVED. THE FOLLOWING DAY JANUARY 05,
2022 GOBLER REPLIED ADVISING HER "PER PHYSICIAN" TO CONTIN-
UE PROPRANOLOL UNTIL METOPROLOL ARRIVED.

42. MS. DIXON FILED A EMERGENCY GRIEVANCE ON JANUARY 19, 2022 COM-
PLAINING OF HER CONTINUING SUFFERINGS AND AGONY. IN VIOLATION OF
HER HIPAA PROTECTIONS HER MEDICAL CONDITIONS WERE MADE PRIVY TO
A NON-MEDICAL INDIVIDUAL LIEUTENANT WHO RESPONDED JANUARY 19,
2022. HER DETERIORATING HEALTH TRIGGERED A EMERGENCY MEDICAL
SUMMON JANUARY 26, 2022. A EKG WAS CONDUCTED WITH ABNORMAL
FINDINGS. SHE DECLINED 23 HOUR OBSERVATION DUE TO THE PUNITIVE
NATURE OF INFIRMARY HOUSING WHEN COMPARED TO REGULAR POPULATION

15

22-0458

AND DISCIPLINARY SEGREGATION. SHE WAS PROVIDED TUMMS FOR HER HEART CONDITION.

43. BY JANUARY 31, 2022 SHE DEPLETED HER METOPROLOL AND SOUGHT A REFILL. ON FEBRUARY 08, 2022 HER ECHOCARDIOGRAM WAS CONDUCTED. BY FEBRUARY 14, 2022, SOME <u>2 WEEKS</u> AGAIN WITHOUT HER HEART MEDICINE, SHE GRIEVED ON EMERGENCY BASIS. GOBLER RESPONDED 2 DAYS LATER ADVISING: "NOT AN EMERGENCY.[5] WAITING FOR PHARM TO DELIVER IN THE NEXT FEW DAYS." ON FEBRUARY 20, 2022 SOME <u>20+</u> DAYS AFTER DEPLETING HER ISSUANCE OF METOPROLOL, SHE WAS PROVIDED A REFILL.

44. ON FEBRUARY 22, 2022, A DOE NURSE NOTIFIED MS. DIXON OF THE SCHEDULED TABLE-TILT TEST. UNQUALIFIED TO DO SO, THIS DOE PROVIDED HER PRE-PROCEDURE INSTRUCTIONS ASSURING HER SHE COULD CONSUME HER HEART MEDICINE PRIOR TO THE PROCEDURE. CONTRARY, REALIZING SHE HAD DONE SO, HER NEEDED PROCEDURE WAS CANCELLED, DELAYED AND SUBJECT TO DOES RESCHEDULING. IT WAS RESCHEDULED AND CONDUCTED MARCH 14, 2022 RESULTING IN ABNORMAL FINDINGS. THE CARDIOLOGIST NARROWED POTENTIAL NEUROLOGICAL ETIOLOGIES FOR HER LITANY OF SYMPTOMS. SUSPECTING HER FAINTING SPELLS TO BE SECONDARY TO A NEUROLOGICAL CULPRIT, THE CARDIOLOGIST ORDERED HER REFERRAL TO NEUROLOGY. THE UNNECESSARY DELAY FROM FEBRUARY 22ND THRU MARCH 14TH, 2022, CAUSED PLAINTIFF ADDITIONAL GRIEF, DISTRESS AND SUFFERING.

45. 3 DAYS AFTER HER TILT TEST AND ON MARCH 17, 2022, SHE EXPERIENCED TERRIFYING AND EXCRUCIATING INTENSE HEART AND CHEST PAINS, A COMPLETE INABILITY TO BREATH AND SEVERE FAINT SENSATIONS. WITH ASSISTANCE OF INMATE WHITE AT 11:30 A.M. AN EMERGENCY MEDICAL SUMMON WAS REPORTED TO DEFENDANT ZABEL WHO CONTACTED MEDICAL. BY 12:24 WHEN NO MEDIC ARRIVED, MR. WHITE ASKED THE INMATE UNIT

5. SEE FN 3, SUPRA.

22-0458

WORKER TO INQUIRE. DEFENDANT RAYFORD IN THE UNIT TOWER AT THE TIME SIMPLY REPLIED "BE PATIENT." AN EMERGENCY GRIEVANCE FORM WAS SOUGHT FROM RAYFORD AND WAS DENIED. ON CAMERA AT APPROXIMATELY 1236 HOURS (SOME 1 HOUR AND 9 MINUTES LATER), DEFENDANT JUSTIN ARRIVED TO MS. DIXON'S UNIT PARTAKING IN FURTHER DELAY BY BANTERING WITH DEFENDANTS ZABEL, JARRETT AND OFFICER GONZALES RATHER THAN RESPONDING TO HER EMERGENCY. AT APPROXIMATELY 1239 HOURS RAYFORD RELEASED MS. DIXON FROM HER QUARTERS.

46. OPPOSED TO RESPONDING TO HER EMERGENCY LOCATION, MS. DIXON WAS MADE TO WALK 300 FT TO JUSTIN DESPITE HER DISTRESS. TERRIFIED AND FRUSTRATED AT THE EGREGIOUS DELAY IN RESPONSE AND EXPERIENCE, UNDER-STANDABLY SHE BERATED JUSTIN'S TARDY RESPONSE VOWING TO GRIEVE HIM. INSTANTANEOUSLY, ON CAMERA IN PRESENCE OF RAYFORD, ZABEL, JARRETT AND OFFICER GONZALES, WITHOUT ANY ASSESSMENT WHATSOEVER, JUSTIN STATED "THEN YOU'RE REFUSING TREATMENT" AND ABANDONED HER IN DISTRESS REFUSING HER CARE. THE EGREGIOUSLY TARDY RESPONSE OF 1 HOUR AND 9 MINUTES WAS OUT OF RESENTMENT TO CAUSE HER SUF-FERING AND ON ACCOUNT OF MEDICAL DEFENDANTS VIEWING HER AS A NUISANCE GIVEN HER MANY MKSR's, GRIEVANCES AND DIXON V. MINEV, SUPRA.

47. RESULTING REPORTS OF JUSTIN AS TYPICAL, WERE DOCTORED AND FALSI-FIED. OBSERVING THE BLATANT REFUSAL OF CARE AND HER SUFFERING, RAYFORD, JARRETT AND ZABEL HAD A DUTY TO REPORT THIS EGREGIOUS ABUSE TO JOHNSON, GOBLER, GUTIERREZ, ONTIVEROS AND OTHER DOE SUPERVISORS (AR 339, RESPONSIBILITY; 339.011.A.(7); 740.032) AND SECURE MS. DIXON'S CARE TO PREVENT HER SUFFERINGS. DESPITE HAVING OPPORTUNITY AND AUTHORITY TO DO SO, THEY EACH CONSCIOUSLY REFUSED, TACITLY APPROV-

ING OF, RATIFYING AND ACQUIESCING IN HER ABUSE AND SUFFERING BY CONCEALING THE ABUSE AND BEING COMPLICIT IN HER UNCONSTITU-TIONAL DENIAL OF MEDICAL CARE.

48. AT 1:49 P.M. SHE SUBMITTED A 2-PAGE EMERGENCY GRIEVANCE RECEIVED, ACCEPTED AND SIGNED BY JACKSON. IT ARTICULATED THE EVENTS. SHE SOUGHT ASSESSMENT, TREATMENT, THE NAME OF JUSTIN FOR LEGAL PURPOSES, THAT MEDICAL REPORTS NOT BE FALSIFIED PURSUANT TO MEDICAL DEFENDANTS CUSTOMS AND SPECIFICALLY THAT VIDEO FOOTAGE BE PRESERVED OF THE EVENT FOR LEGAL PURPOSES. 30 MINUTES LATER AT 2:19 P.M. IN VIOLATION OF AR 740.3 2.B. AND 740.07 2, IN ADDITION TO ALTERING A LEGAL DOCU-MENT BY DISPOSING OF PAGE 2 OF THE DOCUMENT, JUSTIN RESPONDED: "YOU DID NOT EXHIBIT S/S (SIGNS/SYMPTOMS) OF CARDIAC/PULMONARY ISSUES AT TIME OF MANDOWN. PER AR 740, THIS IS NOT AN EMERGENCY GRIEVANCE. (1/2) - PER AR 740, NO MORE THAN THE ABOVE AREA CAN BE FILLED." TAUNTING HER IN HIS DEPARTING STATEMENT JUSTIN STATED "GOD BLESS YOU!" IF HISTORY REPEATS ITSELF, CONVENIENTLY CAMERAS AT SAID TIME WILL HAVE BEEN "INOPERABLE" AND ZABEL AND JARRETT WILL COINCIDENTLY "MISREMEMBER" THESE EVENTS AND ABUSES WHEN CALLED UPON FOR RE-COLLECTION.

49. ON CAMERA AT APPROXIMATELY 9:07 A.M. ON MARCH 25, 2022 SHE REPORTED TO A.M. PILL LINE COMPLAINING TO THE DOE MALE NURSE OF IN-TERNAL BLEEDING AND EXPELLING OF BLOOD IN THE PRESENCE OF JARRETT. SHE WAS REBUFFED SUBSEQUENTLY SUBMITTING ANOTHER EMERGENCY GRIEV-ANCE COMPLAINING OF HER LITANY OF MKSRS, WANTON PAIN AND SUFFERING, INTERNAL BLEEDING, ANAL PAINS AND PASSING OUT FAINTING SPELLS. IT WAS RECEIVED, ACCEPTED AND SIGNED BY JARRETT. AT 4:50 P.M. JUSTIN RE-

22-0458

SPONDED TO THAT GRIEVANCE: "PER AR 740, PLEASE FOLLOW PROPER CHAN-
NELS. REPRIMAND TO FOLLOW."

50. AT 1:10 P.M. ON MARCH 27, 2022 SHE AGAIN FILED A EMERGENCY
GRIEVANCE RECEIVED, ACCEPTED AND SIGNED BY LOPEZ-MAYA. THERE HER
COMPLAINTS PERSISTED AND CONCLUDED SHE WAS "... BEING MADE TO SUFFER
AND MY AILMENTS ARE GETTING WORSE. I NEED TO SEE DR. ASAP - NOT BE
REPRIMANDED!" A UNIDENTIFIED MEDICAL DOE RESPONDED: "NOT AN
EMERGENCY PER AR 740 - THIS IS A DUPLICATE. SEVERAL SUBMITTED - YOU
ARE CONTINUING TO DUPLICATE - SUBMIT WHICH IS GROUNDS FOR REPRI-
MAND."

51. ON MARCH 28, 2022 SHE RETURNED TO CARDIOLOGY WHERE HER METOPROLOL
WAS INCREASED TO 50 MG AND YET ANOTHER NEUROLOGY ORDER WAS EN-
TERED. ON MARCH 30, 2022, SHE SUBMITTED YET ANOTHER EMERGENCY
GRIEVANCE RECEIVED, ACCEPTED AND SIGNED BY JARRETT. THERE SHE
COMPLAINED "NEED TO SEE DR. PLEASE - CONTINUE TO COMPLAIN OF BLOOD
IN STOOL, BREATHING ISSUES, SORE THROAT, FAINTING SPELLS, NECK PAINS,
ETC. FEAR THIS COULD BE A POSSIBLE CANCER. HAVE SUBMITTED SEVERAL
MEDICAL KITES AND AM BEING THREATENED WITH REPRIMANDS FOR CONTIN-
UING TO BRING MY CONCERNS TO MEDICALS ATTENTION ONLY TO BE MET WITH
RESISTANCE AND NEGLECT. PLEASE HELP ME!! SUFFERING / PAIN!!" JUS-
TIN RESPONDED: "APPOINTMENT MADE."

52. SHORTLY PRIOR TO 5:30 P.M. ON MARCH 31, 2022, ONTIVEROS DIRECT-
ED SALKOFF, ASHCRAFT, OBLAK, JACKSON, MARTINEZ, LOPEZ-MAYA AND OTHER
DOES TO SEARCH MS. DIXON'S CELL BASED ON CONFIDENTIAL INFORMATION
PURPORTEDLY FROM A INMATE JOSHUA JOHNSON NO. 1251687. IN CON-
JUNCTION WITH DOING SO AND ON CAMERA ASHCRAFT INCITED A VIOLENT
CONFRONTATION BETWEEN PLAINTIFF, MR. WHITE AND INMATE JOHNSON.

19

53. AS A RESULT OF THE SEARCH AND INCIDENT, AN ABUNDANCE OF HER AND MR. WHITE'S PROPERTIES WERE SEIZED BY THESE DEFENDANTS WHILE SHE AND WHITE WERE DETAINED AND SEGREGATED. AMONGST THIS PROPERTY HANDLED, CONTROLLED AND TAKEN BY THESE DEFENDANTS WERE HER KOP LIFE-SUSTAINING AND OTHER MEDICINES AND HER RIGHT HAND APPARATUS.

54. PRIOR TO, CONTEMPORANEOUS WITH AND SUBSEQUENT TO HER SEGREGATION, SHE SOUGHT HER MEDICATIONS AND APPARATUS FROM MEDICAL DEFENDANTS AND DEFENDANTS SALKOFF, ASHCRAFT, OBLAK, MARTINEZ, LOPEZ-MAYA, JACKSON, BARRETT, STEWART, GARCIA, VALLE AND CERTAIN DOES, TO NO AVAIL AS THESE DEFENDANTS REBUFFED HER PLEAS DESPITE BEING ON NOTICE OF INTERRUPTION OF HER CARE, WANTON SUFFERING SHE ENDURED AND WOULD CONTINUE TO ENDURE ABSENT ASSISTANCE. EACH WERE INDIFFERENT TO SUCH. HAVING KNOWLEDGE OF THESE CIRCUM-STANCES, OPPORTUNITY AND AUTHORITY TO RECTIFY THE VIOLATION, EACH SADISTICALLY CHOSE NOT TO OUT OF RESENTMENT AND SPITE FOR HER AND MR. WHITE'S REVELATIONS OF THESE DEFENDANTS COLLEAGUE OFFICER FAIRROSE LOUVERTURE (SINCE FIRED) AND DEFENDANT ASHCRAFT OPENLY INCITING AND INSTIGATING THE VIOLENT CONFRONTATION WITH INMATE JOHNSON.

55. ON APRIL 05, 2022 ON THEIR BEHALF, MR. WHITE IN PERSON INFORMED VALLE AND GARCIA OF THE IMPERATIVE NEED OF HIM AND MS. DIXON TO OBTAIN ESSENTIAL MEDICINES AND APPARATUS'S OUT OF THEIR PROPERTIES IN POSSESSION OF VALLE AND GARCIA. HE EMPHASIZED THAT THEY WERE LIFE-SUSTAINING MEDICATIONS AND THAT BOTH HE AND MS. DIXON WERE SUFFERING WITHOUT THEM. GARCIA ADVISED THAT MS. DIXON AND MR. WHITE WOULD GET IT WHEN HE (GARCIA)

22-0458

"GETS AROUND TO IT" AND IF THEY KEPT COMPLAINING HE WOULD TAKE MOST OF THEIR PROPERTY. THE COMPLAINTS CONTINUED DUE TO SUFFERINGS AND VALLE AND GARCIA DELIVERED ON THE THREATS PILAGING HER PROPERTY. WHEN IT WAS DELIVERED SHE DISCOVERED HER MEDICINES AND APPARATUS WERE CAPRICIOUSLY AND MALICIOUSLY DISCARDED BY VALLE AND GARCIA PURPOSEFULLY INTERRUPTING AND SABOTAGING HER CARE OUT OF SPITE. SHE WAS MADE TO PREVENTABLY SUFFER FROM MARCH 31, 2022 UNTIL SHE WAS ABLE TO OBTAIN A REFILL FROM MEDICAL DEFENDANTS. HER RIGHT HAND APPARATUS HAS STILL NOT BEEN RETURNED TODATE.

56. ON APRIL 26, 2022 SHE UNDERWENT THE FINAL "STAT" CARDIOLOGY ORDERED TEST ORDERED DECEMBER 23, 2021 (4 MONTHS EARLIER) WHICH ENCOMPASSED AN EXERTING AND STRENUOUS CARDIOLITE TREADMILL TEST. SHE EXHAUSTIVELY COOPERATED. POST-PROCEDURE DEPARTING WARNING OF CARDIOLOGY STAFF EDUCATED HER OF TYPICAL POST-PROCEDURE COM- PLICATIONS ADVISING HER THAT SHOULD SHE ENCOUNTER ANY TO "IMMEDIATELY" ALERT MEDICAL STAFF AS THEY COULD BE LIFE- THREATENING. FOLLOWING HER OFF-SITE RETURN TO THE PRISON AND HER HOUSING UNIT 6-B, AS ALERTED, SHE ENCOUNTERED TERRIFYING COM- PLICATIONS OF BREATHING, FAINT SPELLS, CHEST AND HEART PAINS, FEVER AND HIGH BLOOD PRESSURE. SHE "IMMEDIATELY" CONTACTED UNIT 6B OFFICERS RONOS, GISTEN AND EMIL SEEKING EMERGENCY MEDICAL ATTENTION FOR ASSESSMENT AND TREATMENT OF HER POST-PROCEDURE COMPLICATIONS.

57. RONOS, EMIL AND GISTEN REBUFFED HER REFUSING TO CONTACT MEDI- CAL STAFF FOR EMERGENCY RESPONSE AND COMMENTING ON THE MARCH 31, 2022 STABBING INCIDENT AND HER EXPOSURE OF ASHCRAFT AND

NOW FIRED OFFICER LOUVERTURE FOR INSTIGATING THAT INCIDENT. SHE WAS ADVISED UNLESS SHE "... WAS FLOPPING AROUND ON THE FLOOR" THEY WOULD **NOT** CALL MEDICAL. AS SHE WAS VISIBLY SHAKEN, TERRIFIED AND EXHIBITING CLEAR SYMPTOMS OF DISTRESS, GISTEN AND EMIL CALLOUSLY AND INSENSITIVELY LAUGHED AT, TAUNTED AND DIRECTED EPITHETS AT HER SHOWING ABSOLUTELY NO EMPATHY, CONCERN OR COMPASSION ACTING WITH COMPLETE INSENSITIVITY TO HER DIRE STATE OF SUFFERING AND SHEER TERROR.

58. AFTER SHIFT CHANGE SHE WAS FORTUITOUS TO ACCESS MEDICAL STAFF. IT WAS DISCOVERED HER SYMPTOMS WERE SECONDARY TO HBP CONTRIBUTING TO SPEEDY HEART RATE, FAINT SPELLS, LABORED BREATHING AND HIGH FEVER. ALTHOUGH INCREASED MARCH 28, 2022 TO 50 MG, BY APRIL 28, 2022 (1 MONTH LATER) SHE STILL HAD NOT RECEIVED HER LIFE-SUSTAINING MEDICATION METOPROLOL DUE TO PHARMACY DOES CUSTOMS AND PRACTICES.

59. BY MAY 21, 2022 DUE TO RAPID HEALTH DETERIORATION AND SUFFERING, PREDICTING TRAGIC RESULTS, SHE FILED A EMERGENCY GRIEVANCE CONTINUING THE SUBSTANCE OF HER COMPLAINTS. HER DEPARTING STATEMENT EMPHASIZED: "I AM DETERIORATING AND SUFFERING!" SHE WAS ADVISED SHE'D SEE A PCP MAY 24, 2022 WHICH REVEALED TO BE A HOLLOW PROMISE AS IT WAS PURPORTEDLY CANCELLED DUE TO "LACK OF PROVIDERS" WHICH BROUGHT HER NO COMFORT.[6/]

60. AFTER MONTHS OF COMPLAINTS, MKSRS, SUFFERING, TERROR, AGONIZING PAIN AND BEING INFORMED "... NOT AN EMERGENCY, ... BE PATIENT, ... PLACED ON PROVIDERS LIST, ... LIST IS LONG, ... YOU'LL BE NOTIFIED THE DATE OF YOUR APPOINTMENT," AGAIN PURPORTEDLY SHE WAS SLATED TO SEE A PCP MAY 24, 2022 WHERE IT TOO WAS CANCELLED. DUE TO

6. "LACK OF PROVIDERS" HAS OBVIOUSLY REMAINED THE COMMON NUCLEUS OF HER 8 MONTH PLIGHT AND PROTRACTED DELAYS IN HER CARE AND TREATMENT. SUCH BEING THE CASE IT IS QUESTIONABLE AS TO HOW MEDICAL DEFENDANTS REGARD THIS AS A HIGHER LOC WHEN NO PCPS EXIST TO PROVIDE **ANY** CARE — LESS ALONE A HIGHER LOC FOR THAT MATTER.

22-0458

HER PERSISTENT FAINT SPELLS BY MAY 28, 2022 SHE INJURED HER RIGHT HAND SURGERY SITE AS WELL AS HER LEFT HAND. UNBEKNOWN TO HER AT THE TIME, MATTERS WOULD BE GETTING WORSE SHORTLY.

61. AS LONG PREDICTED AND FEARED, ON MAY 29, 2022 THE UNTHINKABLE MANIFESTED JUST 5 DAYS AFTER BEING CANCELLED PCP ACCESS. AFTER LOSING CONSCIOUSNESS AND STRIKING HER HEAD ON A SHARP CELL LEDGE, SHE WAS DISCOVERED NON-RESPONSIVE IN A POOL OF BLOOD COPIOUSLY BLEEDING OUT BY STAFF. SHE WAS USHERED TO A CLINICAL SETTING, REVIVED, STABILIZED AND RECEIVED SUTURES TO CLOSE THE GRUESOME SCALP GASH BEFORE BEING RETURNED TO HER CELL WITH NO PCP EVALUATION, CT SCAN OR MONITORING IN LIGHT OF THE FORCEFUL HEAD INJURY. TERRIFIED FOR HER LIFE, ON MAY 30, 2022 SHE CORRESPONDED WITH DEFENDANTS JOHNSON, MINEV, GUTIERREZ AND GOBLER BEGGING FOR THEIR ASSISTANCE TO NO AVAIL. SHE ALSO NOTIFIED OTHER MEDICAL DEFENDANTS FILING COUNTLESS GRIEVANCES, REQUESTS AND MKSR'S CONTINUING HER COMPLAINTS AND PLEADING FOR ASSISTANCE. SHE RECEIVED NO RESPONSE OR ASSISTANCE.

62. ON JUNE 02, 2022 SHE FILED ANOTHER EMERGENCY GRIEVANCE COMPLAIN-ING OF INTERNAL BLEEDING, BREATHING ISSUES, BLACK OUT SPELLS, PAINS, ECT. SHE SOUGHT NEUROLOGY CONSULT AND CONTACT WITH A PCP. JUSTIN DISMISSED HER CONCERNS RESPONDING: "PER AR 740, NOT AN EMERG-ENCY GRIEVANCE." ON JUNE 05, 2022 HER METOPROLOL AT 50MG AS ORDERED BY CARDIOLOGY WAS FINALLY INCREASED AND SHE WAS AD-VISED SHE'D BE IMMEDIATELY PROVIDED A "FLOOR STOCK" DUE TO LACKING HER LIFE-SUSTAINING MEDICINE FOR LONG DURATION. BY JUNE 07, 2022 WHEN SHE HADN'T RECEIVED IT SHE FILED YET ANOTHER EMERGENCY GRIEVANCE CONTINUING HER COMPLAINTS. ANOTHER EMERG-

22-0458

ENCY GRIEVANCE FILED JUNE 12, 2022 COMPLAINED OF INTERNAL BLEED-
ING AND BLOOD IN STOOL. A DOE RESPONDED JUNE 14, 2022 "PLACED
ON PROVIDER SICK CALL LIST TO BE SEEN."

63. BY MEDICAL DEFENDANTS ACCOUNT SHE WAS AGAIN SCHEDULED TO SEE
A PCP JUNE 15, 2022 SOME **22 DAYS** AFTER HER PURPORTED MAY 24, 2022
CANCELLATION AND **17 DAYS** AFTER INCURRING THE SERIOUS MAY 29, 2022
HEAD INJURIES. THE PCP CONTACT WAS TO ADDRESS INTERNAL BLEEDING,
HEREDITARY CANCER, BREATHING ISSUES, WEIGHT LOSS AND RIGHT HAND
WRIST STABILIZATION. NOT SURPRISINGLY, THE PROMISE WAS AGAIN
HOLLOW AS WELL AND SHE WAS PURPORTEDLY CANCELLED PROMPTING AN
EMERGENCY GRIEVANCE. IT WAS RESPONDED TO JUNE 16, 2022 BY A NON-
MEDICAL OFFICIAL VIOLATIVE OF HER HIPAA PROTECTIONS AND OFFERED
YET ANOTHER HOLLOW PROMISE THAT SHE WAS AGAIN SCHEDULED TO SEE
A PCP AND "THIS IS NOT A EMERGENCY AS DEFINED BY AR 740."

64. SHE HAD A RECURRENCE OF HORRIFYING SYMPTOMS THE MORNING OF
JUNE 26, 2022 AT 0755 HOURS INCLUDING BULGING EYES, VOMITING, IN-
TENSE CHEST/HEART PAINS, DIZZINESS AND BREATHING COMPLICATIONS
AS WITNESSED BY A OFFICER WHO SUMMONED EMERGENT MEDICS. A
DOE NURSE RESPONDED AT 0815 HOURS, TOOK MS. DIXON'S VITALS TO
DISCOVER HBP AND ACCELERATING HEART BEATS. SHE WAS PLACED BACK
INTO HER CELL AND REFUSED TREATMENT AND WAS NOT TAKEN TO A CLINIC
SETTING FOR MONITORING. IN CELL, SHE WAS MADE TO SUFFER THE
TERRIFYING ORDEAL FOR **5 1/2 HOURS** UNTIL 1:30 P.M. WITHOUT
MEDICAL INTERVENTION.

65. WHEN HER SYMPTOMS WOULD NOT SUBSIDE, AT 1:30 P.M. SHE WAS
USHERED TO THE CLINIC WHERE A EKG WAS PERFORMED WITH ABNOR-
MAL FINDINGS. SHE WAS RETURNED TO HER CELL WITH NO ACCESS TO

24

22-0458

A PCP AND ADVISED A PCP WOULD VIEW HER EKG RESULTS. SHE AGAIN SUBMITTED A GRIEVANCE AND KITES TO GUTIERREZ AND GOBLER PLEADING FOR HELP AND RECEIVED NO RESPONSE. BY JUNE 29, 2022 WITH STILL NO PCP ACCESS SHE SOUGHT THAT CUSTODY STAFF INQUIRE INTO HER PCP APPOINTMENT SOME **34 DAYS** AFTER HER MAY 24, 2022 CANCELLATION IN WHICH SHE WAS ASSURED SHE'D BE RESCHEDULED PRIORITY AT "<u>NEXT</u>" SCHEDULED PCP LINE. A DOE NURSE ADVISED INQUIRING CUSTODY STAFF THAT SHE **WOULD NOT** SEE A PCP THAT HER ONLY PROBLEM WAS THAT SHE WAS A "HYPOCONDRIAC". GIVEN CUSTODY STAFF PERSONALLY WITNESSING HER MEDICAL PLIGHT AND DEGREE OF SUFFERING, UPON RECEIVING THIS ABSURD CONTENTION IT WAS DOCUMENTED INTO UNIT SHIFT LOGS/IR'S. SUBSEQUENTLY, SHE FILED ANOTHER EMERGENCY GRIEVANCE CONTINUING HER COMPLAINTS AND WAS ADVISED "NOT EMERGENCY PER AR 740."

66. AT 9:05 A.M. SHE RESORTED TO PROTEST TO GAIN A CUSTODY SUPERVISOR'S ATTENTION TO THE ISSUE. SERGEANT CROHN ARRIVED, CONTACTED MEDICAL DEFENDANTS AND ASSURED HER SHE'D BE SEEN "NEXT WEEK" (WEEK OF 7/3 - 7/9) WHICH AGAIN SIMPLY AMOUNTED TO LIP SERVICE. ON JUNE 30, 2022 BLOOD DRAW WAS CONDUCTED FOR THYROID AND OTHER AMBIGUOUS REASONS PROVIDED HER. FOLLOWING INJURY FROM HER MAY 29, 2022 INCIDENT AND BY JULY 05, 2022, HER HAND HAD SWELLED CAUSING SUBSTANTIAL REDNESS AND PAIN AND PROMPTING A "MANDOWN". A DOE NURSE TOOK HER BLOOD PRESSURE AND AGAIN FALSELY ADVISED HER SHE'D SEE A PCP.

67. AS OF THE CURRENT DATE MS. DIXON HAS REMAINED AT HDSP FOR A "<u>HIGHER</u>" LOC FOR **9 MONTHS** AND HAS ONLY

22-0458

SEEN 2 PCPS COLLECTIVELY ON NOVEMBER 09TH AND 10TH, 2021

DESPITE HER CONDITIONS AND PLIGHT AGGRESSIVELY PERSISTING

TO THE WORSE AND WITHOUT THE SLIGHTEST ATTENTION FROM A PCP.

IN HER 9 MONTH INTERVAL AT HDSP, SHE HAS UNEQUIVOCALLY

PLACED MEDICAL DEFENDANTS ON NOTICE OF THE SERIOUSNESS OF

HER CONDITIONS AND THE RESULTING TORTURIOUS WANTON PAINS

AND SUFFERINGS SHE CONTINUES TO ENDURE.

68. NAMELY, SHE HAS SUBMITTED IN EXCESS OF **30** MKSRS

AND OVER **35** GRIEVANCES PERTAINING TO HER TREATMENT

AND CARE AND DEFENDANTS HAVE AND CONTINUE TO REBUFF

HER DENYING HER ACCESS TO A PCP AND RESORTING TO SUCH

ABSURDITY SO AS TO FALSELY LABEL HER A "HYPOCONDRIAC"

DESPITE HER EXTENSIVE CLINICAL HISTORY [7] MERELY IN FRAUDU-

LENT EFFORTS TO EVADE THEIR CONSTITUTIONAL DUTY AND RESPONSI-

BILITY IN PROVIDING HER ADEQUATE AND TIMELY TREATMENT

AND OUT OF SHEER SPITE AND RESENTMENT DESPITE HER CCP

CLASSIFICATION AND AS SHE CONTINUES TO DETERIORATE.

69. THE MEDICAL RESPONSES AND TREATMENTS PROVIDED MS. DIXON

AT A "HIGHER" LOC OVER THE COURSE OF THE PAST 8 MONTHS GIVEN

THE SEVERITY OF HER CONDITIONS AND PERSISTENT COMPLAINTS ARE

NO LESS THAN DEPLORABLE, UNCONSCIONABLE, EGREGIOUS AND COM-

PLETELY UNACCEPTABLE AND ARE DEVOID OF ANY QUALITY OF

CARE ACCEPTABLE WITHIN PRUDENT PROFESSIONAL STANDARDS.

MOREOVER, NO SUCH GROTESQUE AND CALLOUSLY INSENSITIVE

TREATMENT COULD FIND ANY SHELTER IN ANY MATURING CIVIL-

IZED SOCIETY NOR BE CONSTRUED AS HUMANE AND DECENT AND

IS SUFFICIENT TO SHOCK THE CONSCIOUS OF ANY REASONABLE CITIZEN TO

THE CORE.

7. PARTICULARLY, COPD/ASTHMA, HBP, POSITIVE BLOOD IN STOOL X3, POSITIVE
TABLE TILT TEST, 40+ ABNORMAL EKES, A SURGERY CORRECTED RIGHT WRIST,
HISTORY OF KIDNEY FAILURE, POST-HEP C TREATMENT, ALARMING HOLTER
MONITOR RESULTS AND THE MAY 29, 2022 INSTANCE RESULTING IN
SERIOUS BODILY INJURY.

26

HOW MUCH PATIENCE MUST BE EXERTED AND HOW MUCH DELAY IS CONSTITUTIONALLY TOLERABLE IN THE CASE AT BENCH WHILE A CANCEROUS CULPRIT POSSIBLY CONSUMES MS. DIXON?

THIS CASE WARRANTS EMERGENCY JUDICIAL IN-TERVENTION.

ZZ-0458

## CLAIM 2

1. State the constitutional or other federal civil right that was violated: FIRST AMENDMENT
TO THE UNITED STATES CONSTITUTION.

2. **Claim 2.** Identify the issue involved.  Check **only one**.  State additional issues in separate claims.

   ☐ Basic necessities          ☐ Medical care                    ☐ Mail

   ☐ Disciplinary proceedings   ☐ Exercise of religion            ☐ Property

   ☐ Access to the court        ☐ Excessive force by officer      ☒ Retaliation

   ☐ Threat to safety           ☐ Other: _____.

3. **Date(s) or date range** of when the violation occurred: 12/06/21 THRU CURRENT.

4. **Supporting Facts**: State as briefly as possible the FACTS supporting Claim 2.  Describe exactly what **each specific defendant (by name)** did to violate your rights. State the facts clearly in your own words without citing legal authority or argument.

5. MS. DIXON REINCORPORATES BY REFERENCE ALL FACTS SET FORTH
IN CLAIM I AS IF CONTAINED HEREIN AT FULL LENGTH.

6. FOR PURPOSES OF HER FIRST AMENDMENT CLAIM, MS. DIXON
SUBMITS THAT THE ACTIONS DESCRIBED AT PARAGRAPHS 35,
36, 45, 46, 47, 48, 50, 52, 53 AND 54 OF CLAIM I GIVE
RISE TO FIRST AMENDMENT CLAIMS AGAINST DEFENDANTS
EMIL, GISTEN, RONOS, JUSTIN, GARCIA, VALLE, RAYFORD,
JARRETT, ZABEL, SALKOFF, ASHCRAFT, OBLAK, MARTINEZ,
LOPEZ-MAYA, JACKSON, BARRETT, STEWART, GUTIERREZ,
GOBLER, BERNALES, RIVAS AND CERTAIN DOES.

28

22-0458

### E.   PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while incarcerated?   ☒ Yes   ☐ No

2. Has this Court or any other court designated you as subject to "three strikes" under 28 U.S.C. § 1915(g)?   ☐ Yes   ☒ No

3. If you have "three strikes" under 28 U.S.C. § 1915(g), does this complaint demonstrate that you are "under imminent danger of serious physical injury?"   ☐ Yes   ☐ No

### F.   REQUEST FOR RELIEF

I believe I am entitled to the following relief: 1). EMERGENCY DECLARATORY JUDGMENT THAT THE DE-SCRIBED ACTS VIOLATE THE U.S. CONSTITUTION; 2). ISSUANCE OF EMERGENCY INJUNCTIVE RELIEF UPON MS. DIXON'S APPLICATION; 3). COMPENSATORY DAMAGES OF $2,500,000.00; 4). NOMINAL DAMAGES OF $1.00; 5). PUNITIVE DAMAGES OF $750,000.00; 6). TRIAL BY JURY; 7). OTHER RELIEF DEEMED PROPER BY THIS COURT INCLUSIVE OF ALL OF MS. DIXON'S COSTS ASSOCIATED WITH THIS LITIGATION.

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** *See* 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

TONEY  A. WHITE, III

(name of person who prepared or helped prepare this complaint if not the plaintiff)

(signature of plaintiff)

AUGUST 14, 2022

(date)

### ADDITIONAL PAGES

You must answer all questions concisely in the proper space on the form. Your complaint may not be more than 30 pages long. It is not necessary to attach exhibits or affidavits to the complaint or any amended complaint. Rather, the complaint or any amended complaint must sufficiently state the facts and claims without reference to exhibits or affidavits. If you need to file a complaint that is more than 30 pages long, you must file a motion seeking permission to exceed the page limit and explain the reasons that support the need to exceed 30 pages in length.

29

22-0488